UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

LANTZ D. DAY,
    *Petitioner*,

v.                                                               1:22-cv-2-MSN-IDD

R. WHITE,
    *Respondent.*

MEMORANDUM OPINION

Lantz D. Day, a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the validity of his June 11, 2015, convictions in the Circuit Court of the City of Fredericksburg, Virginia (hereinafter, "Circuit Court"). [Dkt. No. 1]. On January 26, 2022, the respondent filed a Rule 5 answer and a motion to dismiss, with supporting briefs and exhibits. [Dkt. Nos. 7-9]. Petitioner exercised his right to file responsive materials to the motion to dismiss pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K). [Dkt. No. 12]. Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's motion to dismiss must be granted and the petition must be dismissed with prejudice.

**I.      Background**

Petitioner is detained pursuant to a final judgment order entered by the Circuit Court on June 11, 2015. On March 19, 2015, a jury convicted petitioner of four counts of misdemeanor hit-and-run with property damage in excess of $250 and one count of felony hit-and-run involving property damage in excess of $1,000. *Commonwealth v. Day*, Case Nos. CR-14-1435 through CR14-1439. The trial court sentenced petitioner to six months in jail and a $2,500 fine for three misdemeanor convictions (Case Nos. CR14-1435, CR14-1436, and CR14-1438); a fine of $250

for the fourth misdemeanor conviction (Case No. CR14-1437); and six years in prison with two years suspended for the felony conviction (Case No. CR14-1439).[1] (CCT R. at 121-25).[2] Petitioner appealed and the Court of Appeals of Virginia denied his petition for appeal on December 29, 2015. (Record No. 0883-15-2). In affirming the convictions, the court summarized the evidence as follows:

> The evidence proved that on November 9, 2013, Robert Schmidt parked his car in downtown Fredericksburg. As he and his wife were exiting their vehicle, Schmidt heard "screeching tires" and a violent crash. Schmidt saw the truck he parked next to coming towards his vehicle and saw a white car crash into two other vehicles across the street. Five parked cars were involved in the collision before the car causing the collision came to a stop. Schmidt verified that his wife was not injured and then went directly to the driver's side of the white car that had caused the accident. Schmidt identified appellant as the sole occupant of the vehicle just seconds after the crash, and he saw no one exit the car. Schmidt opened the driver's door and saw appellant "halfway between the driver's seat and the passenger's seat." Initially, appellant was nonresponsive. Schmidt went around to the passenger side and opened the door and tried to help appellant. However, appellant suddenly exited the car, bumping into Schmidt as he got out. Schmidt advised appellant to sit down and wait for help, but appellant began walking away from the scene. When Schmidt commented that the police would be coming, appellant came close to Schmidt and repeatedly stated, "why you calling the f___ing police, don't call the f___ing police, why you doing this." Schmidt and others began following appellant as appellant walked away from the scene.
>
> When they reached a corner, Office Young arrived and spoke with appellant. Ultimately Young struggled with appellant as appellant resisted the officer's attempts to detain him. Appellant got to the ground, but suddenly rose and began to run away. Young used his taser to subdue appellant. Young testified that he spoke with many witnesses at the scene and that one of them said two men jumped from the car and that the driver fled in one direction and the

---

[1] The Circuit Court granted a motion to strike several related charges, Case Nos. CR14-414 through -419, and CR14-421.

[2] The records of the Circuit Court criminal proceedings are separated into five individual files, which are nearly identical in pagination and content. The references to the Circuit Court record herein are based upon the pagination in Case No. CR14-1436.

>passenger walked in another direction.[3] The direction that the witnesses indicated the passenger walked was the same direction appellant walked after exiting the car. The car was registered to appellant.

(*Id.* at 54-55). Petitioner did not appeal to the Supreme Court of Virginia.

On April 27, 2017, petitioner executed a *pro se* motion for a new trial based on newly-discovered evidence, which was filed on May 4, 2017, in the Circuit Court. (CCT R. at 614-16). The alleged evidence was a statement attributed to Nekishchet Lomax, an eyewitness who reportedly told police on the night of November 9, 2013, that she saw "two black males exit[] the vehicle." (*Id.* at 594, 597). Specifically, Lomax allegedly told Officer Young that she saw the "driver jump out of [the] driver's seat and run in the opposite direction of" petitioner after petitioner "got out of the passenger side door." (*Id.* at 591). Petitioner's appellate attorney learned of Lomax's alleged statement for the "first time" during a deposition of a related civil matter in "July, 2016." (*Id.* at 592). The prosecutor moved to dismiss petitioner's motion for lack of jurisdiction pursuant to Rule 1:1 of the Rules of the Supreme Court of Virginia, which states: "All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." (*Id.* at 607). By order entered January 2, 2019, the Circuit Court dismissed petitioner's motion because it lacked jurisdiction and because it had no merit.[4] (*Id.* at

---

[3]  A footnote in the opinion states that "Young's initial report stated that Schmidt had made the statement about the two men getting out of the car. Young explained that he [had] mistakenly attributed that statement to Schmidt and he did not know which witness made the statement." (*Id.* at 55, n.1).

[4]  Indeed, petitioner does not dispute that he was in the car at the time of the collision on November 9, 2013. As such, he surely knew who else was allegedly with him and could have provided that information to his counsel. *See Fullwood v. Lee*, 290 F.3d 663, 686 (4th Cir. 2002) ("[I]nformation that is not merely available to the defendant but is actually known by the defendant . . . fall[s] outside of the *Brady* rule.") (citing *West v. Johnson*, 92 F.3d 1385, 1399 (5th Cir. 1996) (rejecting capital defendant's *Brady* claim that the prosecution suppressed evidence suggesting that the defendant fabricated his confession of stealing a necklace because the defendant "knew whether or not he had taken the necklace, and necessarily knew that better than the prosecution could have"); *United States v. Diaz*, 922 F.2d 998, 1007 (2d Cir. 1990) ("There is no improper suppression within the meaning of *Brady* where the facts are already known by the defendant."); *see, e.g.*, *United States v. Roane*, 378 F.3d 382, 402 (4th Cir. 2004) (rejecting a *Brady*

3

609). Petitioner's notice of appeal was dated January 25, 2019, and filed on January 30, 2019 (*id.* at 610), but he did not perfect his appeal. (*Id.* at 651).

On April 23, 2019, petitioner filed a second *pro se* motion for a new trial based upon the same alleged newly-discovered evidence. (*Id.* at 618-20). On May 7, 2019, the Circuit Court denied the motion based on lack of jurisdiction and because it was without merit. (*Id.* at 619). Petitioner filed a notice of appeal on June 4, 2019 (*id.* at 640), which the Supreme Court of Virginia transferred to the Court of Appeals of Virginia. (Record No. 1906-19-2, at 1, 65 n.1). On October 15, 2020, the Court of Appeals denied the petition for appeal and found that petitioner had provided no basis to conclude that the trial court's judgment was either void *ab initio* or obtained through extrinsic fraud, and further noted that petitioner had not claimed the trial court lacked subject matter jurisdiction. (*Id.* at 66). Consequently, the appellate court "conclude[d] that the trial court's judgment was merely voidable[,] that Va. S. Ct. Rule 1:1 applie[d,]" and that the motion for a new trial therefore "came well after the twenty-one-day jurisdictional window defined by Rule 1:1(a) [which] had elapsed on July 2, 2015." (*Id.* at 66-67). Finding that "the trial court did not have jurisdiction to grant [petitioner] the relief he requested," the court denied the appeal. (*Id.* at 67). Petitioner did not appeal from the judgment to the Supreme Court of Virginia.

On December 1, 2021, petitioner executed his current federal habeas petition and placed it in the prison mailing system on December 2, 2021. [Dkt. No. 1 at 15].[5] He raises the following grounds for relief:

1) The evidence was insufficient to support the conviction of felony hit and run.

---

claim based upon the prosecutor's failure to disclose "statements by the witnesses . . . providing Tipton an alibi" because "[o]bviously, Tipton knew who he was with on the evening of the Talley murder – he had no need for the Government to provide him with such information. Thus, no *Brady* violation has been shown, and we affirm the district court's ruling on the issue.").

[5]  *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (a petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk").

4

2) While petitioner's attorney was aware of the convictions, the Commonwealth failed to comply with the notice requirements of Virginia Code § 19.2-295.1, requiring notice of intent to introduce a robbery conviction into evidence at petitioner's trial.

3) Over a year after his trial and during a civil deposition proceeding, petitioner discovered that the prosecutor withheld from petitioner's trial counsel the statement of an eyewitness, Nekishchet Lomax, that petitioner was not the driver involved in the hit and run, which trial counsel would have used to exonerate petitioner had he known about it.

**II.     Statute of Limitations**

A petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. *See* 28 U.S.C. § 2244(d)(1)(A)-(D). In calculating the one-year period, however, the Court must exclude the time during which properly filed state collateral proceedings pursued by petitioner were pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable state law as interpreted by state courts).

Petitioner's direct appeal proceedings concluded on December 29, 2015, but are deemed final for federal habeas purposes on January 28, 2016—the date on which his time for filing a petition for appeal in the Supreme Court of Virginia expired. *See Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000) (the one-year period does not commence until the latest of either the date when judgment on direct review "became final" or "the expiration of the time for seeking such review") (citing 28 U.S.C. § 2244(d)(1)(A)); *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period"). Accordingly, petitioner had until January 28, 2017, to timely file his federal

habeas petition. He did not file his federal petition until December 2, 2021—more than three years and ten months after his direct appeal was final for federal habeas purposes. The § 2254 petition is untimely unless the limitations period is tolled. As discussed below, the record establishes that petitioner is not entitled to statutory or equitable tolling.

    A.    *Statutory Tolling*

Petitioner asserts that the federal statute of limitations runs from the date that the factual predicate of the claim could have been discovered with due diligence, 28 U.S.C. § 2244(d)(1)(D), and not the date his direct appeal became final. [Dkt. No. 12 at 3]. Petitioner does not specifically state the date that the statute of limitations started to run; however, in his April 27, 2017, motion for a new trial, he admitted that his attorney—through a civil matter related to the criminal proceedings—learned of the alleged exculpatory witness statement in July 2016.[6] For the purposes of this motion, the Court will assume that petitioner knew of the alleged *Brady* evidence—Lomax's statement—by at least April 27, 2017, and that the federal statute of limitations began to run on that date. Even giving petitioner the benefit of the later date, however, his federal petition is untimely.

On January 2, 2019, the Circuit Court dismissed petitioner's April 27, 2017, motion for lack of jurisdiction because it had not been timely filed under Va. S. Ct. R. 1:1. Accordingly, the first motion for a new trial did not toll the federal statute of limitations because it was not properly filed. *See Pace*, 544 U.S. at 417 (holding petitioner was not entitled to statutory tolling under 28 U.S.C. § 2244(d)(2) where state habeas petition was dismissed as untimely); *Artuz v. Bennett*, 531

---

[6]    Petitioner's admission that his attorney was aware of the *Brady* information in July 2016 is significant. *See Wood v. Spencer*, 487 F.3d 1, 5 (1st Cir. 2007) (finding a *Brady* claim barred by the statute of limitations because the defendant's lawyer's knowledge was attributable to him) (citing *United States v. Desir*, 273 F.3d 39, 44 (1st Cir. 2001)). Consequently, petitioner's alleged *Brady* claim could have been raised between July 2016 and the expiration of the ADEPA one-year statute of limitations on January 28, 2017.

U.S. 4, 8 (2000) (holding a state collateral proceeding is not "properly filed" for purposes of tolling the federal limitations period if it is filed untimely).[7] The same is true of the second motion for a new trial (filed on April 23, 2019) that the Circuit Court also found was untimely. The Circuit Court's decision was upheld on appeal by the Court of Appeals of Virginia on October 15, 2020.

Even if the Court assumes that the time was somehow tolled through November 16, 2020 (allowing for the thirty-day period to seek review in the Supreme Court of Virginia from the Court of Appeals' order denying the petition for appeal), petitioner did not execute his federal petition until December 2, 2021—more than two weeks past the expiration of the one-year federal statute of limitations. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.") (emphasis added); *see also Trapp v. Spencer*, 479 F.3d 53, 58-59 (1st Cir. 2007) (tolling "does not reset the clock on the limitations period . . . but merely stops it temporarily, until the relevant applications for review are ruled upon"), *abrogated on other grounds by Holmes v. Spencer*, 822 F.3d 609 (1st Cir. 2016). In short, absent equitable tolling, the present federal petition is barred by the statute of limitations.

### B.     Equitable Tolling

A habeas petitioner may be permitted to file a federal habeas petition out of time if he can establish his entitlement to equitable tolling, which requires that the petitioner show "(1) that he has been pursuing his rights diligently, *and* (2) that some extraordinary circumstance stood in his

---

[7]     *See Crowley v. Landon*, 780 F.2d 440, 444 (4th Cir. 1985) (noting that Rule 1:1's termination of a trial court of jurisdiction after twenty-one days was "unambiguous"); *Hall v. Johnson*, 332 F. Supp. 2d 904, 909 (E.D. Va.) (observing that because "the trial court lacked jurisdiction to entertain Hall's motion for resentencing pursuant to Rule 1:1 of the Rules of the Supreme Court of Virginia, that motion was not 'properly filed' and it follows that the § 2244(d) one-year limitations period was not tolled during the pendency of that motion"), *appeal dismissed*, 115 F. App'x 162 (4th Cir. 2004).

way" and prevented timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted) (emphasis added). A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008). The Fourth Circuit observed that equitable tolling is reserved for "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Harris*, 209 F.3d at 330.

A *Brady* claim, however, does not necessarily entitle a habeas petitioner to equitable tolling. *See Ford v. Gonzalez*, 683 F.3d 1230, 1238 (9th Cir. 2012). In *Ford*, the Ninth Circuit rejected the petitioner's argument that he was "entitled to equitable tolling merely because he allege[d]" a *Brady* claim. *Id.* at 1237. *Ford* found that if the petitioner "were correct, AEDPA's one-year statute of limitations could never bar a *Brady* claim." *Id.* at 1237-38. *Ford* noted that several circuits had found *Brady* claims were time-barred and agreed "that the statute of limitations may bar such claims in appropriate circumstances." *Id.* at 1238 (citing *Daniels v. Uchtman*, 421 F.3d 490, 492 (7th Cir. 2005) (noting that information supporting petitioner's *Brady* claim could have been discovered more than one year prior to petitioner's filing of his federal habeas petition); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111, 113 (2d Cir. 2000) (dismissing *Brady* claim as time barred where petition was filed almost two years after the petitioner obtained the exculpatory materials)); *see, e.g.*, *Elmore v. Lewis*, No. 9:16-1064, 2016 U.S. Dist. LEXIS 181260, *16 (D.S.C. Sept. 30, 2016) (no equitable tolling when petitioner delayed three years after he claimed he discovered basis for *Brady* claim), *adopted*, 2017 U.S. Dist. LEXIS 1247 (D.S.C. January 4, 2017).

Petitioner admits that he knew about Lomax's statement, which he alleges the prosecutor

withheld, before he filed the first motion to vacate. [Dkt. No. 1 at 14]. He seeks to avoid the time bar by arguing that his "limited legal knowledge has led [him] to roadblocks within the intricacies of the legal system," and that he has done his "best." [*Id.*]. He also alleges that "the pandemic has hindered further progress and timeliness." [*Id.*]. Petitioner's

> ignorance of his ability to file for habeas relief fails to constitute an extraordinary circumstance that would warrant equitable tolling. It is well established that "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (citations omitted). Simply put, [petitioner] fails to demonstrate some external impediment, rather than his own lack of diligence, prevented him from filing a habeas petition in a timely fashion.

*O'Neill v. Dir., Va. Dep't of Corr.*, No. 3:10cv157, 2011 U.S. Dist. LEXIS 88096, at *19 (E.D. Va. Aug. 9, 2011), *appeal dismissed*, 470 F. App'x 200 (4th Cir. 2012).

The record conclusively establishes that petitioner was aware of Lomax's statement no later than April 27, 2017; moreover, petitioner admitted that his attorney, Joshua Erlich, assured him in a letter dated February 3, 2017, that the "*Brady* issue would be fruitful on appeal." [Dkt. No. 12 at 2].[8] Erlich withdrew from his representation of petitioner a short time after that correspondence and petitioner then "hurriedly" filed both of his motions for a new trial. [Dkt. No. 12 at 2]. The pandemic did not cause any disruptions until nearly three years later.[9] Further, having known about the alleged exculpatory evidence since at least April 27, 2017, petitioner's failure to

---

[8] Petitioner was represented by Ian Whittle at trial and he retained Erlich during the appeal. [Dkt. No. 12 at 1].

[9] To the extent petitioner contends the COVID-19 pandemic is cause for equitable tolling, "the COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion." *United States v. Henry*, No. 2:17cr180, 2020 U.S. Dist. LEXIS 234135, *8 (W.D. Pa. Dec. 14, 2020); *see also Rush v. Sec'y, Fla. Dep't of Corr.*, No. 21-10218-C, 2021 U.S. App. LEXIS 18647, *3 (11th Cir. June 22, 2021) (unpublished) (COVID-19 not an extraordinary circumstance because all prisoners attempting to access legal resources subject to COVID-19 protocols). The record lacks any evidence that would support equitable tolling. To the contrary, petitioner had all of the documents to support his alleged *Brady* claim in 2017.

bring the federal petition in a timely manner establishes that he was not diligent.[10] Petitioner has also not established that there was any extraordinary circumstance that prevented him from filing his federal habeas petition in a timely manner.

### III. Conclusion

For the foregoing reasons, the motion to dismiss the petition [Dkt. No. 7] is granted and the petition is dismissed with prejudice. An appropriate Order shall issue.[11]

/s/
Michael S. Nachmanoff
United States District Judge

September 29, 2022
Alexandria, Virginia

---

[10] It is of no moment to argue that exhaustion of state remedies was required before filing in federal court because the Supreme Court has expressly sanctioned filing a federal petition and asking to stay the federal petition to allow for exhaustion in state court where the state petition could result in a dismissal as untimely, which would negate tolling while the state proceedings were pending. The Supreme Court held "[a] prisoner seeking state postconviction relief might avoid this predicament . . . by filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted." *Pace*, 544 U.S. at 416 (citing *Rhines v. Weber*, 544 U.S. 269, 278 (2005)); *Hyman v. Keeler*, 2011 U.S. App. LEXIS 15161 at *30 (4th Cir. Aug. 10, 2011) (holding *Pace* "extended the *Rhines* rationale beyond mixed 2254 petitions"); *see also Dreyfuse v. Pszczokowski*, No. 3:16-cv-06717, 2017 U.S. Dist. LEXIS 28034 at *43-44 (S.D. W. Va. Jan. 6, 2017) (noting that the Third, Fourth, Seventh, Ninth, and Tenth Circuits have extended the *Rhines* stay and abey procedure to unmixed petitions), *adopted by* 2017 U.S. Dist. LEXIS 26738 (S.D. W. Va. Feb. 27, 2017). *See, e.g.*, *Freeman v. Page*, 208 F.3d 572, 577 (7th Cir. 2000) ("a prisoner who wants to pursue state relief while assuring an entitlement to federal relief can protect himself by filing in both courts. The federal action should be stayed while the state court decides what to do"). Here, petitioner's § 2254 petition raised two claims he pursued on direct appeal in addition to his *Brady* claim. Under *Rhines*, he could have filed in federal court and sought a stay and abey order.

[11] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.